Fred C. Niederkrome, et al., * v. Commissioner. Niederkrome v. Commissioner
Docket Nos. 51491, 51527-51529, 51531, 51533.
United States Tax Court
T.C. Memo 1960-89; 1960 Tax Ct. Memo LEXIS 203; 19 T.C.M. (CCH) 459; T.C.M. (RIA) 60089; May 6, 1960
*203 This proceeding was remanded by the Ninth Circuit Court of Appeals, 266 F. 2d 238, for "reconsideration." Held, the corporate distributions by Oregon Motor Stages in payment of certain incidental expenses and in retirement of 350 shares of its stock held by Bentson, which proceeds were used for the repayment of a loan taken by Bentson, were not essentially equivalent to dividends under section 115(g) of the 1939 Internal Revenue Code. Randall S. Jones, Esq., and Louis Eisenstein, Esq., for the petitioners. John D. Picco, Esq., for the respondent. VAN FOSSAN Supplemental Memorandum Opinion VAN FOSSAN, Judge: These proceedings are now before us pursuant to an opinion and mandate of the United States Court of Appeals for the Ninth Circuit, filed on November 10, 1958, wherein it was ordered *204 that the cases be in part "reversed and remanded to the Tax Court for reconsideration." The Court of Appeals' opinion is reported at 266 F. 2d 238. The cases and our original opinion therein involved several issues but were reversed with respect only to one. This was whether $350,000 disbursed by Oregon Motor Stages in retirement of 350 shares of capital stock issued to Bentson was to be considered essentially equivalent to a dividend within the meaning of section 115(g) [2] of the 1939 Internal Revenue Code. A related though secondary question concerned smaller amounts disbursed to cover the interest and incidental expenses attendant upon the note for $350,000 signed by Bentson and E. Royce and payable to American Business Credit Corporation. We held these amounts to be essentially equivalent to dividends and, as such, taxable to the petitioners. *205 The Court of Appeals, speaking through Judge Fee, now deceased, stated that our decision "was effected by two errors of approach": First, that we "held that the determination of the Commissioner was evidence to be weighed against that produced by taxpayers," and second, that we "admitted in evidence the purported minutes of a meeting of ABC Delaware executive committee and considered these binding upon taxpayers." With all due respect for the learned Court and the distinguished author of the opinion in the instant cases, we would observe that we have searched our prior opinion carefully, but without success, to find support for the first error as stated by the above Court. We are fully aware that the presumption of correctness of respondent's determination is not a matter of evidence but is merely a fixation of the procedural posture of the parties to the trial and that such presumption "disappears once evidence which would support a contrary finding has been adduced in the trial of a contested issue," as succinctly stated in the opinion of the Court of Appeals. If we held as the Court states, of course it was error. The second error pointed to by the Court was the admission *206 in evidence of the purported minutes of the executive committee of ABC Delaware. At the trial petitioners' counsel stated that he had no objection to the authenticity or identity of the exhibit, but objected chiefly on the ground that the exhibit was hearsay. The exhibit was admitted in evidence over petitioners' objection, which action was held by the Court of Appeals to constitute error. The facts were fully developed at the trial of the cases, and therefore we see no useful purpose to be served in setting the cases down for further hearing. Neither party hereto has requested such action on our part. As we view the judgment and opinion of the Court of Appeals and in our attempt to comply with the Court's direction to determine "whether the taxpayers received any financial or economic benefits as a result of the redemption of the stock of Bentson," we think it sufficient to make certain specific findings of ultimate facts in conformity with the opinion of the appellate court. In any respect in which these findings are in conflict with the findings in our original opinion, these findings shall supersede the original findings. In conformity with the mandate and the opinion of *207 the Court of Appeals, we hereby specifically exclude from consideration all reference to the minutes of the executive committee of ABC Delaware designated as Exhibit A in the record. Accordingly, based upon the entire record herein, and upon our understanding and interpretation of Judge Fee's observations and holdings in his opinion, we make the following additional findings: 1. Petitioners were unwilling to purchase more than 400 of the 750 shares of Oregon Motor Stages stock offered as a unit by the then shareholders. 2. During the period when petitioners were endeavoring to secure a purchaser for the remaining 350 shares, L. R. Bentson indicated his interest and finally agreed to purchase the stock. 3. In order to finance the purchase, E. Royce and L. R. Bentson applied to American Business Credit Corporation, an Oregon corporation, for a loan of $350,000, which was approved and granted by the parent company. 4. The loan was granted subject to two conditions, both of which were fulfilled after the sale was consummated: First, E. Royce was required to sign the note of indebtedness as an accommodation maker, and second, the entire 750 shares had to be pledged as collateral. *208 5. The 750 shares were purchased and paid for on July 2, 1945, petitioners taking 400 shares and Bentson the balance. 6. Oregon Motor Stages, after Bentson's offer of August 31, 1945, purchased Bentson's stock for $350,000, which amount was turned over to American Business Credit Company (Oregon) in payment of the original loan to Bentson. 7. Petitioners did not realize any financial or economic gain from the redemption of Bentson's 350 shares. 8. The payment by Oregon Motor Stages of the service fee for financing the loan and the payment of interest on the loan did not result in any financial or economic gain to petitioners. Because of these findings of ultimate fact, we conclude that the payment of $350,000 in redemption of Bentson's stock and the payment of certain incidental expenses were not essentially equivalent to the distribution of a taxable dividend to the petitioners under the statute first above cited. [3]
Respondent raises the issue on remand as to whether the redemption in question created a dividend taxable to petitioner E. Royce individually. This same theory was advanced in the alternative in the original *209 proceedings. We held that all of the petitioners received the dividend. In doing so we rejected the respondent's alternative contention. In any event, our findings set forth in conformance with the Court of Appeals' opinion indicate that none of the petitioners, including E. Royce, received any economic benefit from the redemption. It follows that E. Royce did not receive a distribution essentially equivalent to a dividend. Because the original computation of the deficiencies covered all of the issues, including those affirmed on appeal, such original computations are not in conformity with this supplemental opinion and reformed or revised computations must be filed. Decisions will be entered under Rule 50. Footnotes
*. Proceedings of the following petitioners are consolidated herewith: Ezra Royce, Docket No. 51527; B. Royce, Docket No. 51528; Estate of Isabelle H. Royce, Deceased, B. Royce, Executor, Docket No. 51529; Robert T. Jacob and Agnes C. Jacob, Docket No. 51531; and Albert L. Schneider and Bertha Schneider, Docket No. 51533.↩
2. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * *
(g) Redemption of Stock. - (1) In General. - If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.↩
3. See also Regulations 111, sec. 29,115-9.↩